Sergio Salzano, Esq.
Nevada Bar No. 006482
LYNCH, HOPPER & SALZANO, LLP.
231 South Third Street, Suite 130
Las Vegas, Nevada 89101
(702) 868-1115
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| RIGHTHAVEN, LLC, a Nevada limited-liability company, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Civil Action No. 2:10-CV-01036 LRH-PAL ) |
| REALTY ONE GROUP, INC., a Nevada corporation; DAVID TINA, an individual, and MICHAEL J. NELSON, an individual, | ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANT, MICHAEL J. NELSON'S MOTION TO DISMISS**

**POINTS AND AUTHORITIES**

**I.    STATEMENT OF FACTS**

Defendant Michael Nelson hereby moves this Court for dismissal of the Complaint filed against him by Righthaven, LLC. (hereinafter "Righthaven"). The gravamen of the claims brought in that Complaint are for copyright infringement, arising out of Mr. Nelson's reproduction of a portion of one article that appeared in the online version of the Las Vegas Review Journal.

One of the articles in question was authored by Hubble Smith, the authors of the other two articles is not disclosed in the Complaint and its Exhibits. These persons are purportedly

1  employees of the Review Journal, which, purportedly, owned the copyrights in the intellectual
2  property created by each.  The ownership of the copyright in the Smith work has been
3  transferred to Righthaven.[1]  Plaintiff Righthaven has alleged that the inclusion of portions of the
4  first article into Mr. Nelson's blog constitutes an infringement of the copyright in that work.

5  Michael Nelson is a realtor, duly licensed in Nevada.  His practice is limited to
6  representing purchasers and sellers of single family homes in Las Vegas, Nevada.  Mr. Nelson
7  provides a blog of information, accessible to the public, on issues related to his profession, to
8  wit, the suitability and desirability of homeownership in Las Vegas.  Information copied from
9  the Hubble Smith Review Journal article was placed in this blog,   As will be shown, the
10 reproduction of the small portion of the Smith article, alleged in the Complaint, does not rise to
11 the level of a copyright violation, therefore, the Complaint brought by Righthaven against
12 Michael Nelson must be dismissed in its entirety.

13 **II.    STANDARD OF REVIEW**

14 For a defendant to prevail on a motion to dismiss under Federal Rule of Civil Procedure
15 12(b)(6), it must appear beyond doubt that the plaintiff can prove no set of facts in support of his
16 claim which would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957);
17 Cervantes v. City of San Diego, 5 F.3d 1273, 1274 (9th Cir. 1993).  The purpose of a motion
18 under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for
19 relief in the complaint.  Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 738 (9th Cir.
20 1987).
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /

26 ─────────────
27 [1]    As the ownership of the copyright in the second and third articles is not asserted in the Complaint, Defendant Nelson is seeking dismissal of such claims, *infra*.

- 2 -

## III. ARGUMENT

### A. DISMISSAL OF THE CLAIMS OF ALLEGED COPYRIGHT INFRINGEMENT OF ARTICLES FOR WHICH NO COPYRIGHT OWNERSHIP HAS BEEN DEMONSTRATED IS WARRANTED

The Complaint alleges three instances of alleged copying, but asserts ownership of only one of the articles allegedly copied. The first article, authored by Hubble Smith, is entitled "Program May Level Housing Sale Odds" (hereinafter "Program Article"). It is attached as Exhibit "2" to the Complaint. Plaintiff Righthaven asserts ownership of the Program Article copyright at paragraph 16 of the Complaint.

The second work that Righthaven mentions is entitled "Las Vegas Property Values at 2000 Levels," by author unknown. The Complaint fails to demonstrate Righthaven's ownership of the copyright in this work. The third work that Righthaven mentions is entitled "More Can Qualify for Homeownership in Las Vegas," by author unknown. Similarly, the Complaint fails to demonstrate Righthaven's ownership of the copyright in this work.

As ownership of the copyright in a work is a prerequisite to bringing a lawsuit to enforce the copyright,[2] and as Righthaven has not demonstrated, in the Complaint, ownership of the copyright in either of the last two works mentioned, dismissal is warranted regarding these copyright claims.

/ / /
/ / /
/ / /
/ / /

---

[2] 17 U.S.C. 411 (a) states, in pertinent part:

(a) Except for an action brought for a violation of the rights of the author under section 106A (a), and subject to the provisions of subsection (b), no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.

**B.      ANY ALLEGED INFRINGEMENT BY MICHAEL NELSON IS ALLOWED UNDER THE FAIR USE DOCTRINE**

Mr. Nelson believes that Plaintiff cannot make out a prima facie copyright infringement claim, as the amount copied of the Program Article was small.[3]  Nevertheless, without waiving his assertion that regarding whether a prima facie case of copyright infringement can be presented, the doctrine of fair use provides a complete defense to such claim.  Therefore, the infringement claim should be dismissed.

The doctrine of fair use is codified in the Copyright Act of 1976, 17 U.S.C. §107, which states, in part:

> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include——
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

No one factor is conclusive, but all four factors must be weighed.  Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994).[4]

---

[3]   That Program Article, as it appears in Exhibit "2" to Plaintiff's Complaint, consists of 18 paragraphs, of which, only 5 were copied.

[4]   "The task is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis.... Nor may the four statutory factors be treated in isolation, one from another.  All are to be explored, and the results weighed together, in light of the purposes of copyright."  Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577-78, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994).

- 4 -

1   The fair use doctrine is intended to balance the rights of authors against the creative

2   efforts of others, and to promote the welfare of the public:

3   "From the infancy of copyright protection, some opportunity for fair use of
    copyrighted materials has been thought necessary to fulfill copyright's very
4   purpose...." Campbell, 510 U.S. at 575, 114 S.Ct. 1164. "The fair use doctrine
    thus `permits [and requires] courts to avoid rigid application of the copyright
5   statute when, on occasion, it would stifle the very creativity which that law is
    designed to foster.'" Id. at 577, 114 S.Ct. 1164 (quoting Stewart v. Abend, 495
6   U.S. 207, 236, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990)) (alteration in original).

7
    *  *  *
8
    The purpose of copyright law is "[t]o promote the Progress of Science and useful
9   Arts," U.S. CONST. art. I, § 8, cl. 8, and to serve "`the welfare of the public.'"
    Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 429 n. 10, 104
10  S.Ct. 774, 78 L.Ed.2d 574 (quoting H.R.Rep. No. 2222, 60th Cong., 2d Sess. 7
    (1909)).
11

12  Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1163 (9th Cir. 2007).

13   The alleged infringement by Michael Nelson qualifies as fair use under the four factors

14  of the fair use doctrine.

15       *1)*   ***Purpose and Character of the Use***

16   The most important component of the inquiry into the purpose and character of the use is

17  the question whether the allegedly fair use was "transformative," in other words, whether the

18  second use adds something new, with a further purpose or different character, altering the first

19  with new expression, meaning, or message.  Los Angeles News Service v. CBS Broadcasting,

20  Inc., 305 F.3d 924 (9th Cir. 2002).[5]

21   The form in which Mr. Nelson chose to republish the material with other material

22  regarding the state of the housing market in his blog is transformative.  Mr. Nelson aggregated

23  the section of the Hubble article into his blog with snippets of other information regarding the

24  state of the Southern Nevada housing market, thereby transforming the nature of the individual

25  article into a montage of information.

26  ─────────────

27       [5]   Opinion amended by Los Angeles News Service v. CBS Broadcasting, Inc., 313
              F.3d 1093 (9th Cir. 2002).

- 5 -

1    Indeed, the use of the copied material here is similar to the use of thubnail pictures in
2  Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146 (9th Cir. 2007).  In that case, Perfect 10
3  sued Amazon and Google as a result of Google's search engine reproducing thumbnail (reduced
4  size) images of Perfect 10's copyrighted images.  In finding that the thumbnail reproduction was
5  "transformative," the court stated:

> Google's use of thumbnails is highly transformative. In Kelly, we concluded that Arriba's use of thumbnails was transformative because "Arriba's use of the images serve[d] a different function than Kelly's use—improving access to information on the [I]nternet versus artistic expression."  Although an image may have been created originally to serve an entertainment, aesthetic, or informative function, a search engine transforms the image into a pointer directing a user to a source of information.[6]

Similar to the Google thumbnails, the materials presented in Mr. Nelson's blog serve not only the purpose of gathering varied materials on the state of the Las Vegas housing market, it also acted as a pointer to the source of the information, the Review Journal website.[7]

As the use of the copied material is in a transformative context, and acted as a pointer to the source material itself, this factor weighs in favor of a finding of fair use.

### *2)    Nature of the Copyrighted Work*

The nature of the allegedly copied work is factual news reporting.  Such information, which is less endowed with the creative activity than works of fiction, makes it easier to find fair use.  "Works that are creative in nature are closer to the core of intended copyright protection than are more fact-based works."[8]  "The law generally recognizes a greater need to

---

[6]    Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1165 (9th Cir. 2007) citations omitted.

[7]    See Exhibit "3" to the Complaint, fourth page, at bottom, where it states "Click here to read the full article."  Mr. Nelson's posts all provided access to the origin of the article, and therefore, would have served as a feeder or pointer to the original source material, not unlike a search engine.

[8]    A & M Records v. Napster, 239 F.3d 1004, 1016 (9th Cir. 2001) (citing Campbell, 510 U.S. at 586, 114 S.Ct. 1164) (internal quotation marks omitted).

- 6 -

disseminate factual works than works of fiction or fantasy."[9] As explained further in Los Angeles News Service v. CBS Broadcasting, Inc., 305 F.3d 924 (9th Cir. 2002):

> We have analyzed the "nature of the copyrighted work" factor extensively in prior LANS litigation. "The Denny beating tape is informational and factual and news; each characteristic strongly favors [the user]. Likewise the fact that the tape was published before its use by [the alleged infringer]. Although the Videotape is not without creative aspect in that it is the result of [Marika] Tur's skills with a camera, still this factor makes it a great deal easier to find fair use." This factor clearly points toward fair use.[10]

Moreover, since the article by the Review Journal appeared on the internet before it was copied to the internet by Mr. Nelson, this factor weighs in favor of fair use. "Published works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred."[11] Thus, the "nature of the copyright work" factor, when taken as a whole, mitigates in favor of a finding of fair use.

### 3) Amount of the Copyrighted Work

This factor also favors a finding of fair use, since only the portions of the article in question that were needed were copied. "While wholesale copying does not preclude fair use per se, copying an entire work militates against a finding of fair use."[12]

> Case law interpreting this factor, though of course faithful to the statute's direction that we are to consider the substantiality of the portion used "in relation to the copyrighted work as a whole," has also noted that the purpose and

---

[9] Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 563, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)

[10] 305 F.3d at 940; opinion amended by Los Angeles News Service v. CBS Broadcasting, Inc., 313 F.3d 1093 (9th Cir. 2002)..

[11] Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 564, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) (noting that the scope of fair use is narrower with respect to unpublished works because the author's right to control the first public appearance of his work weighs against the use of his work before its release).

[12] Worldwide Church of God v. Phila. Church of God, Inc., 227 F.3d 1110, 1118 (9th Cir. 2000).

character of the use are relevant in evaluating the denominator. See, e.g., Kelly v. Arriba Soft Corp., 280 F.3d 934, 943 (9th Cir. 2002) ("If the secondary user only copies as much as is necessary for his or her intended use, then this factor will not weigh against him or her.").[13]

As stated *supra*, the article in question, entitled "Program May Level Housing Sale Odds" consists of 29 sentences in 18 paragraphs. Mr. Nelson copied 8 of the 29 sentences, 5 of the 18 paragraphs. By either measure, Mr. Nelson copied less than 28% of the article.

More importantly, the portion copied of the article was only the amount needed to introduce the information regarding the program being offered by Fannie-Mae. Mr. Nelson avoided copying the balance of the article, which analyzed the potential effects that this program might have in Las Vegas. This factor does not weigh against a finding of fair use.

### 4) *Effect of the Use Upon the Potential Market*

Because the use of the copied material was transformative, it will likely have no effect on the market for internet news articles. A transformative work is less likely to have an adverse impact on the market of the original than a work that merely supersedes the copyrighted work. Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 591, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994) (stating that a work that supersedes the object of the original serves as a market replacement for it, making it likely that market harm will occur, but when the second use is transformative, market substitution is less certain).

Mr. Nelson did not profit from the advertising on the website where the copied materials were displayed, unlike the alleged infringers in both the Google[14] and Arriba[15] cases. Blogs, by their very nature, are informative, and are not written for commercial gain. Mr. Nelson did not place the advertising on the blog website, was not in control of such advertising, and was not

---

[13] Los Angeles News Service v. CBS Broadcasting, Inc., 305 F.3d 924, 941 (9th Cir. 2002); opinion amended by Los Angeles News Service v. CBS Broadcasting, Inc., 313 F.3d 1093 (9th Cir. 2002).

[14] Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146 (9th Cir. 2007).

[15] Kelly v. Arriba Soft Corp., 336 F.3d 811 (9th Cir. 2003).

1  profiting from the advertising on the blog website.  His blog, in contrast, was created to be

2  informative, not as a source of revenue.  The material was placed into Mr. Nelson's blog

3  primarily to educating the general public regarding the suitability of Las Vegas as a location for

4  the purchase of real estate.

5  Moreover, because Mr. Nelson's blog was acting as a feeder or pointer to the Review

6  Journal website, it would likely benefit, not harm the Review Journal's market.

> Arriba's use of Kelly's images in its thumbnails does not harm the market for Kelly's images or the value of his images.  By showing the thumbnails on its results page when users entered terms related to Kelly's images, the search engine would guide users to Kelly's web site rather than away from it.[16]

It is unclear as to whether Righthaven has purchased any right, other than the right to initiate litigation, from the Review Journal with regards to the Program Article.  If it is demonstrated that the Plaintiff cannot derive any commercial benefit or royalties from the internet publishing of the article, considerations of effect upon the potential market should automatically be found in favor of Mr. Nelson.

### C. DISMISSAL IS WARRANTED BECAUSE PLAINTIFF BRINGS THE CLAIMS WITH UNCLEAN HANDS

Plaintiff brings these claims with unclean hands, which mandates dismissal of this action.  The defense of unclean hands can be invoked as a defense in a copyright infringement action.[17]

The actions of Plaintiff Righthaven in pursuing the instant action for copyright infringement smack of barratry.[18]  Righthaven was created by its counsel, Steven Gibson, apparently to pursue violations of the copyrights it purchased from the Review Journal.  Righthaven is not the author of the work that was alleged to have been copied.  In fact,

---

[16] Kelly v. Arriba Soft Corp., 336 F.3d 811, 821 (9th Cir. 2003).

[17] See 4 Nimmer on Copyright § 13.09[B].

[18] Barratry is defined in Black's Law Dictionary (6th Ed.) as "the offense of frequently exciting and stirring up quarrels and suits."

- 9 -

1  Righthaven purchased the copyright in the Program Article sometime after the alleged
2  infringement occurred, and likely purchased the copyright with the specific intention of pursuing
3  this action against Mr. Nelson.
4  Thus, it appears that Mr. Gibson, upon discovering these infringements, purchased the
5  copyrights so as to pursue the infringement actions against the allegedly liable parties.  Neither
6  the Review Journal, nor Righthaven, sent a cease and desist letter, nor any other request to
7  discontinue the alleged infringement, prior to initiating this action.  Instead, Righthaven has
8  brought this lawsuit (and apparently 80 others) against alleged infringers, further adding to this
9  Court's overloaded docket.  Righthaven's motivation for avoiding the simple act of sending a
10 letter requesting that Mr. Nelson cease and desist is simple, it is using these lawsuits as a source
11 of revenue.  Such abuse of legal process should be rejected.

**CONCLUSION**

In this case, Michael Nelson has operated a blog for the purpose of educating the general public regarding the state of the housing market in Southern Nevada.  His actions in copying a portion of a Review Journal article, consonant with this purpose, fall within the fair use doctrine.  The nature of a blog is to be informative, and such uses for the internet should be encouraged by copyright law, especially where the author of the blog, as Mr. Nelson herein, does not derive commercial benefit directly from the webpage that displays the blog.  Defendant Michael Nelson asks this Court to dismiss the allegations of copyright infringement based upon Plaintiff's lack of ownership of the copyright, fair use of copied materials and unclean hands.

DATED this 29th day of July, 2010.

LYNCH, HOPPER & SALZANO, LLP

/s/   Sergio Salzano
_____
By:   SERGIO SALZANO, ESQ.
      NV Bar # 006482
      231 South Third Street, Suite 130
      Las Vegas, Nevada  89101
      ATTORNEYS FOR DEFENDANT MICHAEL J. NELSON